UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUG PAD USA LLC<br>    Plaintiff<br><br>v.<br><br>RUG PAD CORNER LLC,<br>RUG PAD RETAILERS OF AMERICA LLC,<br>WEB CORNER STORES LLC, AND<br>ISAM KAOUD<br>    Defendants | :<br>:<br>:   CASE NO.:<br>:<br>:<br>:<br>:<br>:<br>:   JUNE 2, 2016<br>:<br>: |

## VERIFIED COMPLAINT

Plaintiff Rug Pad USA LLC, for its Complaint seeking monetary damages, a permanent injunction to prevent defendants Rug Pad Corner LLC, Rug Pad Retailers of America LLC, Web Corner Stores, LLC, and Isam Kaoud from continuing the misuse and misappropriation of the Plaintiff's intellectual property in violation of the Lanham Act and under the Connecticut Unfair Trade Practices Act, an accounting of defendants profits, and its attorneys' fees and costs states:

## THE PARTIES

1. Plaintiff Rug Pad USA LLC (**"Rug Pad USA"**) is a Connecticut limited liability company with its principal place of business in Bridgeport, CT. Rug Pad USA sells rug pad materials through websites under the registered internet domain names "rugpadusa.com" and "ecorugpads.com."

2. Defendant Rug Pad Corner LLC (**"RPC"**) is a Connecticut limited liability company with a principal place of business at 3 Trowbridge Drive, Bethel, Connecticut. On information and belief, defendant Isam Kaoud is the sole member and owner of RPC.

3. Defendant Rug Pad Retailers of America LLC (**"RPRA"**) is a Connecticut limited liability company with a principal place of business at 3 Trowbridge Drive, Bethel,

1

Connecticut.  On information and belief, defendant Isam Kaoud is the sole member and owner of RPRA.

4. Defendant Web Corner Stores LLC ("**WCS**") is a Connecticut limited liability company with a principal place of business at 27 Danbury Road, Wilton, Connecticut.  On information and belief, defendant Isam Kaoud is the manager of WCS.

5. Defendant Isam Kaoud (**"Kaoud"**) is an individual and resident of the State of Connecticut, residing at 15 Penny Lane, Bethel, Connecticut.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, as Rug Pad USA seeks relief under 15 U.S.C. § 1125 and 15 U.S.C. § 1117 for trademark infringement, unfair competition, and domain name infringement.  Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims arising under the statutory and common law of the State of Connecticut because the state law claims are so related to the federal claims that they form part of the same case or controversy.

7. This Court has personal jurisdiction over defendants RPC, RPRA, WCS, and Kaoud (collectively, **"Defendants"**) because they are located within this District, have continuously and systematically conducted business within this District, and because the harm suffered by Rug Pad USA flows directly from such business conducted by Defendants.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Rug Pad USA and the Defendants are found, reside, or transact business in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

**I.     PLAINTIFF'S MARKS, DOMAIN NAMES AND TRADEMARKS**

9.     Rug Pad USA is the owner of the marks RUGPADUSA and ECORUGPADS, among other marks. Rug Pad USA filed registrations of the marks RUGPADUSA, Application Serial Number 86918327; and ECORUGPADS, Application Serial Number 86918347, in February, 2016. Plaintiff registered the trademark ECO-PLUSH on January 16, 2016, Registration # 4889630. (Hereinafter, RUGPADUSA, ECORUGPADS and ECO-PLUSH collectively referred to as **"Plaintiff's Marks"**).

10.    Rug Pad USA registered the domain name "rugpadusa.com" on September 7, 2012, and registered the domain name "ecorugpads.com" on August 8, 2012 (collectively, **"Plaintiff's Domains"**).

11.    Rug Pad USA has been procuring, marketing and selling felt and other padding materials for carpeting underlay from its Bridgeport headquarters since 2012, primarily using the Internet and websites, including websites under the Plaintiff's Domains, and the hosted Amazon.com and EBay.com websites as its marketing vehicles for its products utilizing the Plaintiff's Marks. Rug Pad USA sells its products directly to consumers who order products through the Internet. Rug Pad USA is also an Amazon.com seller whose products are displayed in photographs and captions on the Amazon and eBay websites. Rug Pad USA's sources of materials are United States-located manufacturers and suppliers, and Rug Pad USA takes pains to require that its suppliers are located within the United States. Rug Pad USA's Bridgeport, Connecticut facility receives and processes internet orders in response to customer demands.

12.    Since it began operations in 2012, Rug Pad USA has sold to over 125,000 residential and business customers throughout the United States, totaling approximately $4

million in sales through the Plaintiff's Domains, and $7 million when combined with sales through Amazon.com. Rug Pad USA has spent over $550,000 in the past four years to advertise and promote its business, marketing the Plaintiff's Marks and Plaintiff's Domains throughout the United States, including within this District.

13. The Plaintiff's Marks are valid, subsisting, unrevoked and uncancelled. In addition, the Plaintiff's Marks are now, and since prior to the acts of Defendants complained of herein have been, widely recognized throughout the United States and at all relevant times have been famous marks within the meaning of 15 U.S.C. § 1125(c).

## II. DEFENDANTS' CONDUCT

14. Kaoud organized RPC in 2008. He organized RPRA in May, 2013. Defendants run several websites under the umbrella of "Rug Pad Retailers."

15. Upon information and belief, Kaoud is primarily responsible for the registration, maintenance and use of the websites of RPC and RPRA, which include "rugpadsusa.com", "usarugpads.com", "usarugpad.com.", "ecorugpad.com", "ecorugpadsusa.com", "feltrugpadusa.com", "rugpadsusa.wordpress.com", "shoprugpadusa.com", and "toprugpadusa.com" (collectively, **Defendants' Domains**").

16. After Rug Pad USA registered Plaintiff's Domains in August and September 2012, the Defendants registered Defendants' Domains, all of which play off and/or infringe on Plaintiff's Marks and Plaintiff's Domains. For example, Defendants copied Rug Pad USA's domain name but added the letter "s" to create the domain name "rugpadsusa.com" and rearranged the order of the wording to create the domain name "usarugpads.com" and registered both on December 29, 2012. The remainder of Defendants' Domains were all registered after Rug Pad USA's registration of Plaintiff's Domains.

17. Defendants also sell goods under the names "EcoRugPads" and "RugPadsUSA" on the Amazon, eBay, and Houzz.com websites. Defendants are not affiliated with Rug Pad USA and have never been licensed or otherwise authorized by Rug Pad USA to use its trade name, trademarks, or domain names in any manner. Google Internet searches for Plaintiff's Domain "rugpadusa.com" or Plaintiff's Mark RUGPADUSA bring up links to Rug Pad USA's website but also brings up "USA Rug Pads - American Made Premium Rug Padding," which links to Defendants' website at "usarugpads.com."

18. Customers seeking to contact Rug Pad USA have also mistakenly contacted Defendants because Defendants' name and URL is purposely nearly identical to Rug Pad USA's RugPadUSA trade name, its RUGPADUSA mark, and its "rugpadusa.com" domain name. Similarly, customers of Defendants have demonstrated confusion caused by Defendants' mimicking of Rug Pad USA domain name: Defendants' customers have tried to "return" or "change" orders that they had placed with Defendants but have contacted Rug Pad USA instead.

19. As noted, Defendants have shown a pattern and practice of imitating Rug Pad USA's intellectual property, including the following:

   a. Rug Pad USA registered the domain name "rugpadusa.com" on September 7, 2012, and Defendants registered the domain names "rugpadsusa.com" and "usarugpads.com" on December 29, 2012 and "shoprugpadusa.com" and "toprugpadusa.com" on June 22, 2013.

   b. After Rug Pad USA registered the internet domain name "ecorugpads.com" on August 8, 2012, Defendants later registered the domain names "ecorugpad.com" on June 4, 2014, and "ecorugpadsusa.com" on September 13, 2014.

5

c. Rug Pad USA has advertised and sold natural carpeting underlays using the name "Eco-Fiber" beginning in May, 2013. Defendants followed suit by advertising using the *same name*.

d. Rug Pad USA terminated its use of the "Eco-Fiber" mark and began using the ECO-PLUSH mark January 12, 2015, and registered ECO-PLUSH as a trademark July 7, 2015. Defendants followed suit and currently sell products under the name "Eco-Plush" on USArugpads.com and eBay, among other internet sites. An eBay search for Eco-Plush results in a display of a product whose seller, although not fully identified, is identified as being located in Bethel, Connecticut, where Defendants are located.

e. On Defendants' website at "usarugpads.com" Defendants claim to sell "Our Eco-Plush felt rug pads . . . made in the USA by Shaw Industries." Shaw Industries does not list a product using the Eco-Plush name, the ECO-PLUSH mark is owned by Rug Pad USA, and Defendants are again infringing on Rug Pad USA's intellectual property.

20. Defendants became aware of Rug Pad USA's trade names and trademarks and imitated Rug Pad USA's intellectual property in order to take advantage of Rug Pad USA goodwill, reputation, innovations and marketing expenditure.

21. Defendants' actions have caused actual confusion and if not curtailed will continue to cause a likelihood of consumer confusion or mistake, or to mislead or deceive consumers, as to the source, origin, connection, affiliation, sponsorship, or approval of Defendants' services, and to divert business intended for Rug Pad USA to Defendants' competing business. Defendants' imitation of Plaintiff's Domains and Plaintiff's Marks has misled and will continue to mislead consumers into mistakenly believing that Defendants'

services and products are owned, authorized or approved by or affiliated with Rug Pad USA.

22. By using trade names, trademarks, domain names, and/or websites for Internet advertising that are nearly identical with Rug Pad USA's trade name and marks and which are inherently confusing, Defendants are diverting consumers who are seeking Rug Pad USA to Defendants' own competing businesses. Defendants' conduct constitutes a deliberate intent to trade on the goodwill Rug Pad USA has in its trade name, marks, and domain names and to profit from the investment Rug Pad USA has made in its intellectual property.

23. Defendants are intentionally seeking to confuse purchasers about the entity from whom they may purchase carpet underlay materials in order to benefit from Rug Pad USA's trade name, marks, trademarks, and domain names.

24. Rug Pad USA sells many of its products through Amazon.com, including its trademarked "Anchor Grip," "Ultra Black", and "Natural Comfort 20" products. Defendants also sell their products on Amazon.com (which makes no effort to monitor infringement and counterfeiting), and Defendants and their affiliates have frequently listed infringing and inferior products, using Plaintiff's Marks, as if they were competing suppliers of the same products, but at prices lower than Rug Pad USA's prices. Thus, Amazon customers are misled by Defendants into believing that Defendants are offering the same product at a lower price on the same Amazon webpage that shows Rug Pad USA's trademarked and superior product.

25. Defendants have profited from and have been unjustly enriched by the use of trade names, trademarks, and domain names that infringe upon one or all of Plaintiff's Marks, Plaintiff's Domains and related trade names and websites.

26. Rug Pad USA cannot calculate the amount of business that has been diverted away from it to the Defendants as a result of Defendants' illegal conduct without discovery of

7
1271819

Defendants' business volume, the sources of Defendants' business, and the number and value of customer orders that were handled by Defendants where the customers purchased from Defendants as a result of confusion resulting from Defendants' intentional imitation and infringement.

**FIRST CLAIM FOR RELIEF** – Trademark Infringement under 15 U.S.C. § 1114(1)

27. Rug Pad USA incorporates by reference herein all allegations sets forth above in Paragraphs 1–25 of this Complaint.

28. Defendants' use in commerce of Plaintiff's Marks and Plaintiff's Domains has caused confusion and/or is likely to cause confusion, mistake, or to deceive.

29. The foregoing actions of the Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

30. Defendants' conduct as aforesaid has caused irreparable injury to Rug Pad USA, and unless such conduct is enjoined, Rug Pad USA will continue to suffer irreparable injury, for which Rug Pad USA has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF** – False Designation of Origin under 15 U.S.C. § 1125(a)

31. Rug Pad USA incorporates by reference herein all allegations sets forth above in Paragraphs 1–29 of this Complaint.

32. Defendants' use in commerce and otherwise of the Plaintiff's Marks and Plaintiff's Domains is, upon information and belief, intended to and/or is likely to cause confusion or mistake, or to deceive the relevant public that Defendants are Rug Pad USA or are affiliated, connected or associated with Rug Pad USA.

33. The above-described acts of Defendants constitute use of false designations of origin and false and misleading descriptions or representations that have and/or are likely to

cause confusion or mistake, or to mislead as to the affiliation, connection or association of Defendants in violation of 15 U.S.C. § 1125(a).

34. Defendants' conduct as aforesaid has caused irreparable injury to Rug Pad USA, and unless such conduct is enjoined, Rug Pad USA will continue to suffer irreparable injury, for which Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF – Cyberpiracy under 15 U.S.C. § 1125(d)**

35. Rug Pad USA incorporates by reference herein all allegations sets forth above in Paragraphs 1–33 of this Complaint.

36. Plaintiff's Marks, which are incorporated in Plaintiff's Domains are distinctive.

37. Rug Pad USA has used Plaintiff's Marks and Plaintiff's Domains for nearly five years.

38. Rug Pad USA sells its products throughout the country through Plaintiff's Domains, and those sales have totaled over $4 million.

39. Rug Pad USA has expended over $550,000 on advertising, nearly all of which has been spent to increase search hits for Plaintiff's Domains, which in turn increases sales of Rug Pad USA's products.

40. Due to the similarity between Plaintiff's Domains and Defendants' Domains, customers and potential customers have actually confused Rug Pad USA and Defendants.

41. Defendants did not register Defendants' Domains until after Rug Pad USA registered Plaintiff's Domains.

42. Defendants registered Defendants' Domains knowing that they were confusingly similar to Plaintiff's Domains.

43. Defendants' registration and use of the Defendants' Domains constitutes a

violation of 15 U.S.C. § 1125(d).

44. Defendants' conduct as aforesaid has caused irreparable injury to Rug Pad USA, and unless such conduct is enjoined, Rug Pad USA will continue to suffer great and irreparable injury, for which Rug Pad USA has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF - Unfair Trade Practices in Violation of Connecticut General Statutes §§42-110a, *et seq*.**

45. Rug Pad USA incorporates by reference herein all allegations sets forth above in Paragraphs 1–43 of this Complaint.

46. Defendants have been and are engaged in the conduct of trade or commerce as defined in Connecticut General Statutes Section § 42-110a(4) through their advertising, sale, and/or offering for sale in Connecticut products such as those for which they infringe Plaintiff's Marks and Plaintiff's Domains.

47. It is Defendants' primary trade or business to advertise, sell, and/or offer to sell products such as those for which they infringe Plaintiff's Marks and Plaintiff's Domains.

48. Defendants have engaged in unfair or deceptive acts or practices in violation of Conn. Gen. Stat. Section 42-110b. Said acts were immoral, unethical, oppressive, and unscrupulous, in that:

    a. Defendants have copied, misappropriated, and unfairly profited from Plaintiff's Marks, Plaintiff's Domains and Rug Pad USA's web marketing.

    b. Defendants have misrepresented themselves as sellers of Rug Pad USA's products.

    c. Defendants have intentionally caused consumers to believe that they were buying products sold by Rug Pad USA, when in fact Defendants have sold those consumers inferior products.

      d.      Defendants' actions are in violation of the public policy against:

           i.      the misappropriation of and dilution of trademarks as set forth in the Lanham Act, 15 U.S.C. §§ 1114 and 1125;

           ii.      the unauthorized tarnishing of the business and personal reputation of Rug Pad USA by tying its name and the Plaintiff's Marks to inferior products and services;  and

           iii.      the public policy against impersonating and/or pretending to be a company or affiliated with a company with the intent to obtain a benefit or to injure or defraud another as set forth in Connecticut's Criminal Impersonation statute, Connecticut General Statutes § 53a-130.

49.      Rug Pad USA has sustained ascertainable losses thereby, including the diversion of its rightful business.

## **JURY DEMAND**

50.      A jury is demanded by plaintiff Rug Pad USA LLC for all claims triable to a jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff Rug Pad USA LLC requests the following relief:

1. A grant of permanent injunctive relief enjoining and restraining defendants Rug Pad Corner LLC, Rug Pad Retailers of America LLC, Web Corner Stores LLC, and Isam Kaoud, their officers, directors, agents, servants, employees, members, successors, assigns, and all those in privity with or in active concert or participation with them from:

   a. Using the Plaintiff's Marks and Plaintiff's Domains or any confusingly similar mark, symbol, device, logo, word, term or name, or any combination thereof, in connection with their business or the sale of any goods and services in any manner or context whatsoever, including but not limited to maintaining, leasing or otherwise having an internet domain site in the name of or an e-mail account containing any of the Plaintiff's Marks, without prior written authorization from plaintiff Rug Pad USA LLC;

   b. Making any statement or representation and/or performing any acts likely to lead the public, or individual members of the public, to incorrectly believe that Defendants are directly or indirectly associated or connected with, or sponsored or approved by, Rug Pad USA LLC;

   c. Engaging in any acts or activities calculated to trade upon Plaintiff's Marks and/or Plaintiff's Domains or the reputation or goodwill of Rug Pad USA LLC, or in any manner to falsely designate Defendants' goods and/or services as originating with, being associated with, or sponsored or approved by plaintiff Rug Pad USA LLC; and

   d. Committing any other act that infringes or dilutes the quality or value of Plaintiff's Marks and Plaintiff's Domains or constitutes an unfair trade practice, unfair competition, or false advertising; and

2. An Order requiring Defendants to deliver to plaintiff Rug Pad USA LLC or its counsel for destruction:

    a. Any books, printed materials, electronic materials, publications, promotional materials, video or audio materials, packages, labels, cartons, boxes, signs, prints, wrappers, receptacles, advertising, or documents or images stored or transmitted by any electronic means of any type bearing or otherwise referencing the Plaintiff's Marks and/or Plaintiff's Domains, or any confusingly similar word, term, mark, symbol, device or logo, or combination thereof; and

    b. All stationery, business cards, invoices, catalogs, advertising materials, or any other material of any type bearing Plaintiff's Marks and/or Plaintiff's Domains, or any confusingly similar word, term, mark, symbol, device or logo, or combination thereof; and

3. An Order requiring Defendants to file with the Court within thirty (30) days after issuance of any permanent injunction in this action a report in writing under oath setting forth in detail the manner and form in which it has complied with the provisions of said injunction and order to destroy all material having the same or confusingly similar mark to Plaintiff's Marks and/or Plaintiff's Domains;

4. An Order directing Defendants, their agents, servants, representatives, employees, successors, assigns and attorneys and all those directly or indirectly in active concert or participation with any of them, to transfer to plaintiff Rug Pad USA LLC the Defendants' Domains;

5. Actual and compensatory damages;

6. An accounting of Defendants' profits;

7. Treble damages as provided under 15 U.S.C. § 1117(d);

8. Attorney's fees and costs pursuant to 15 U.S.C. §1117(a) and Conn. Gen. Stat. § 42-110g(d);

9. Punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a); and

10. Such other and further relief as the Court deems just and proper.

PLAINTIFF,
RUG PAD USA LLC

By: *[signature]*

Andrew L. Houlding (ct12137)
Adam B. Marks (ct28787)
Updike, Kelly & Spellacy, P.C.
265 Church Street, 10th Floor
New Haven, CT 06510
Phone: (203) 786-8300
Fax: (203) 772-2037
Email: ahoulding@uks.com
Email: amarks@uks.com
Its attorneys

## **VERIFICATION**

I, William McDonald, Owner and Member of Rug Pad USA LLC, hereby certify that I have personal knowledge of the matters set forth in the foregoing Complaint or the information contained therein has been collected and made available to me by the employees or agents of Rug Pad USA LLC. I further certify that the factual allegations made therein are true and accurate to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2016.

_____
WILLIAM McDONALD

15
1271819